UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DENNIS MUELLER,<br><br>        Plaintiff,<br><br>    v.<br><br>MANUEL CRUZ, et al.,<br><br>        Defendants. | Case No.: SA CV 13-01274-CJC (JCGx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |

## I. INTRODUCTION

In 2012, Plaintiff Dennis Mueller was shot multiple times by Manuel Cruz, a deputy in the Orange County Sheriff's Department. Following the shooting, Mr. Mueller filed suit against Orange County, the Orange County Sheriff's Department, and Orange

County Sheriff Sandra Hutchens (collectively, the "County Defendants"), and against Deputy Cruz himself. Mr. Mueller is bringing four causes of action: (1) an excessive force claim against Deputy Cruz under 42 U.S.C. § 1983; (2) a *Monell* claim against the County Defendants based on the allegation that the County is liable for Sheriff Hutchens's and nonparty District Attorney Tony Rackauckas's post-incident conduct because both are county policymakers; (3) a claim for violation of the Bane Civil Rights Act (Cal. Civ. Code § 52.1) against Deputy Cruz, Orange County, and the Orange County Sheriff's Department; and (4) a battery claim under California Penal Code § 242 against Deputy Cruz, Orange County, and the Orange County Sheriff's Department.

Defendants' motion for judgment on the pleadings at issue here challenges only the *Monell* claim and the Bane Act claim. For the reasons discussed below, the Court GRANTS Defendants' motion for judgment on the pleadings on the *Monell* claim, but hereby gives Mr. Mueller 21 days to amend his complaint, and DENIES Defendants' motion for judgment on the pleadings with respect to the Bane Act claim.[1]

## II. BACKGROUND

Mr. Mueller alleges that at about 12:45 p.m. on March 10, 2012, Deputy Cruz shot him at least five times as they stood in front of Mr. Mueller's residence in Trabuco Canyon. (Dkt. 1, Compl ¶ 5.) Mr. Mueller asserts that at the time of the shooting, Deputy Cruz was angry because he thought Mr. Mueller had recently evaded him on his motorcycle. (Compl. Ex. A at 1-2.) Mr. Mueller survived the shooting, and asserts that he now suffers from post-traumatic stress disorder and has permanent physical injuries. (Pl.'s Opp'n Br. at 1.) He alleges that he was not an immediate threat to himself or

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for December 28, 2015 at 1:30 p.m. is hereby vacated and off calendar.

others, was not in flight, and was not resisting arrest, and that the Deputy Cruz used excessive force against him. (Compl. ¶ 5.) At the time of the shooting, Mr. Mueller was not armed. (*Id.*) Mr. Mueller was later charged with evading an officer in violation of California Vehicle Code § 2800.2, resisting arrest in violation of California Penal Code § 148(a), and driving on a suspended license in violation of California Vehicle Code § 14601.1(a). (Compl. ¶ 10.) Mr. Mueller pled guilty to the violation of § 2800.2 and the other charges against him were dismissed. (Compl. ¶ 11.)

Mr. Mueller's complaint alleges that Sherriff Hutchens "ratified" Deputy Cruz's conduct by failing to discipline him and provide him with training after the incident. (Compl. ¶ 31.) It also alleges that Orange County District Attorney Tony Rackauckas (who is not a party to this case) "ratified" Deputy Cruz's conduct by, among other things, conducting an inadequate investigation designed to exonerate the deputy, failing to consider relevant evidence, and having his investigators encourage Deputy Cruz to fabricate testimony. (Compl. ¶ 32.)

## III. LEGAL STANDARD

A court may grant a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), which provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings is substantially identical to a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because both permit challenges to the legal sufficiency of the opposing party's pleadings. *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002). The main difference between the two motions is timing: a 12(b)(6) motion is brought before filing an answer, whereas a motion for judgment on the pleadings is brought after the pleadings are closed. Schwarzer, et al., Rutter Group Practice Guide: Federal Civil Procedure

Before Trial, § 9:199, at 9-50 (2007).  Judgment on the pleadings is appropriate when, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law.  *Torbet v. United Airlines, Inc.*, 298 F.3d 1087, 1089 (9th Cir. 2002).

## IV. ANALYSIS

### A. The Complaint's Cause of Action for *Monell* Liability

In *Monell v. New York City Dept. of Social Services*, the Supreme Court held that liability under 42 U.S.C. § 1983 may be imposed on local governments when their official policies or customs cause their employees to violate another's constitutional rights.  436 U.S. 658, 690-91 (1978).  A plaintiff may establish *Monell* liability by showing that a city employee committed an alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity."  *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).  A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008).

A "custom" is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."  *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quotes omitted).  A municipal government may be liable as a result of a "governmental custom even though such a 'custom' has not received formal approval through the body's official decision-making channels."  *Monell*, 436 U.S. at 691.  Nonetheless, "[l]iability for custom may not be predicated on isolated or sporadic incidents; it must be founded upon

practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A practice of inadequate training also constitutes a policy giving rise to § 1983 liability. *Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 769 (9th Cir. 1989). A municipality may be liable under § 1983 where "that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). Liability may be imposed where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

Here, Defendants assert that Mr. Mueller's complaint does not contain sufficient allegations to support a *Monell* claim—regardless of whether the claim is based on the act of a county policymaker, custom, or a failure to train—because Mr. Mueller has based his claim entirely on the conduct of Sheriff Hutchens and District Attorney Rackauckus *after the shooting incident occurred*, and that such conduct fails to meet *Monell*'s requirement that the policymakers' conduct *cause* the constitutional violation. Defendants also attack Mr. Mueller's characterization of Rackauckas as a final decision-maker capable of making county policy for the purposes of *Monell* because as a matter of California law, a district attorney determining whether to prosecute an individual is acting on behalf of the state as opposed to the county. Both arguments have merit and each is addressed in turn here.

//
//
//

### 1. County Policyholders' Post-hoc Ratification of Officer Guzman's Shooting of Mr. Mueller

With respect to his *Monell* claim, Mr. Mueller's complaint alleges that Sheriff Hutchens was responsible for making county policy, and that she "ratified" Officer Cruz's unlawful conduct by: (1) directing the Sherriff's Department not to conduct a full and complete investigation of the unlawful shooting by Deputy Cruz; (2) placing Deputy back on full active duty as a motor officer in the same area where Mr. Mueller resided with his mother and brother; (3) failing to provide Deputy Cruz "with further and more complete training as to the written policies of the Sheriff's Department regarding circumstances of use of deadly and excessive force on non-violent subjects"; (4) failing to discipline Deputy Cruz for "various transgressions" with respect to the policies and procedures of the County Defendants; and (5) failing to provide Deputy Cruz with "further and more complete training on the County's written policy of conducting pursuits of fleeing individuals in automobiles or motorcycles." (Compl. ¶ 31.)

The Complaint further alleges that District Attorney Rackauckas, also a final policymaker for the County, "ratified" the illegal conduct of Deputy Cruz by conducting an investigation into Deputy Cruz's shooting of Mr. Mueller that was designed to cover up the truth of the incident by prolonging the investigative process, seeking a pre-determined result that would aid the County in defending against liability, ignoring physical evidence such as a shell casing at the scene, directing officers not to interview witnesses whose testimony might demonstrate the unlawfulness of the shooting, having the investigators encourage Deputy Cruz to fabricate testimony, and intentionally failing to disclose unfavorable evidence. (Compl. ¶ 32.)

The Complaint bases the *Monell* claim and liability against the County on these assertions against Sheriff Hutchens and District Attorney Rackauckas.  In response to

Defendants' argument that these allegations fail to state a claim because they focus exclusively on conduct after the shooting, Mr. Mueller's briefing argues that he is not only alleging that Rackauckas and Hutchens's post-hoc conduct is the basis for a *Monell* violation, but is also alleging that a policy of indifference to police shootings that predated the incident. (Dkt. 56, Pl.'s Opp'n Br. at 13-14.) But this more expansive reading of Mueller's complaint is not borne out by the document itself. The most natural reading of substantive allegations giving rise to the *Monell* claim—all contained in paragraphs 31 and 32 of the complaint and summarized above—indicates that they indeed focus entirely on conduct following the shooting. The Ninth Circuit has held that the behavior of policymakers after the constitutional violation is relevant to *Monell* liability insofar as it reveals the municipality's policies already in place at the time of the constitutional violation. *Larez v. City of Los Angeles,* 946 F.2d 630, 647 (9th Cir.1991). Nonetheless, courts in this circuit have stopped short of holding that a plaintiff can prove *Monell* liability simply on the basis of a defendant department's post-incident ratification through failure to discipline or take other action concerning the officer directly involved.

Ratification is generally a fact question for the jury, but "a plaintiff must establish that there is a genuine issue of material fact regarding whether a ratification occurred." *Christie v. Iopa,* 176 F.3d 1231, 1238-39 (9th Cir. 1999). "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Id*. at 1239 (quoting *City of St. Louis v. Praprotnik,* 485 U.S. at 127). Here, Mueller has not alleged that any policymaker acted or was aware of a policy or culture of acceptance of illegal force such as that allegedly used by Cruz, or a failure to adequately train officers about the use of force, "before the alleged constitutional violations ceased." *See Christie,* 176 F.3d at 1239. Rather, Rackauckas and Hutchens exonerated Deputy Cruz after the alleged use of excessive force. Their actions as alleged therefore did not themselves result in the violation of Mueller's constitutional right to be free from excessive force, as is required for *Monell* liability. In *Christie*, by way of

contrast, the court determined there was a triable issue of fact concerning whether a prosecutor ratified a deputy prosecutor's selective prosecution of a plaintiff because in that case there was evidence that the prosecutor knew and approved of the deputy's actions *before the alleged constitutional violation ceased. Christie,* 176 F.3d at 1239-40 (emphasis added); *see also Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dep't,* 387 F. Supp. 2d 1084, 1099 (N.D. Cal. 2005) (concluding that because "[t]he violation occurred prior to the alleged indifference," the plaintiff had not established a dispute of fact regarding ratification based on a Chief of Police's approval of an allegedly deficient internal affairs investigation).

In *Larez,* which held that the post-hoc exoneration of an officer by the chief of the Los Angeles Police department was relevant to a claim based on the officer's underlying conduct, the city was liable under *Monell* for use of excessive force because, among other things, its procedures for investigating complaints against its officers was flawed. 946 F.2d at 646-47. The Ninth Circuit discussed "holes" and "inconsistencies" in the post-incident investigation of the plaintiff's complaint, and noted that an expert had testified that they "should have been visible to any reasonable police administrator," but the court did not conclude that the city was liable under a ratification theory. *Id.* at 647. Rather, the problems with the actual investigation were found to be evidence that the city engaged had a policy or custom of ignoring or condoning officers' use of excessive force. *Id.* As another court considering this issue concluded, "*Larez* does not establish ratification by deliberate indifference towards a single after-the-fact investigation." *Cole*, 387 F. Supp. 2d at 1101; *see also Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1189 (D. Haw. 2003) (discussing *Larez* and concluding that "[t]he Ninth Circuit appears to require something more than a failure to reprimand to establish a municipal policy or ratification").

Accordingly, Mr. Mueller's extensive allegations concerning the post-shooting behavior of purported County policymakers could be relevant to a *Monell* claim concerning County and Sheriff's Department policy, custom, and training procedures in place at the time of the shooting. But the complaint as written does not make the necessary underlying allegations about the policy, custom, or training procedures in place at that time, and because the allegations of post-hoc conduct are not tethered to any such underlying allegations, the *Monell* cause of action as written fails to adequately state a claim.

### 2. Whether District Attorney Rackauckas has Final Policymaking Authority

Defendants also attack Mr. Mueller's *Monell* claim on the independent basis that it incorrectly asserts that District Attorney Rackauckas is a final county policymaker capable of creating liability for the county through his actions with respect to this incident. Whether a particular individual has "final policymaking authority" sufficient to impose liability under *Monell* for a single decision is a question of state law. *Praprotnik*, 485 U.S. at 124. In California, a "district attorney is a state officer when deciding whether to prosecute an individual." *Weiner v. San Diego County*, 210 F.3d 1025, 1031 (9th Cir. 2000). A district attorney's prosecutorial decisions and investigations do not relate to county policies or customs and a district attorney therefore does not impute liability onto a county based on such prosecutorial decisions or investigations. *Id.* at 1028.

Here, Mr. Mueller's complaint alleges that "[i]n Orange County, the District Attorney's Office is charged with the responsibility of conducting . . . an investigation into the *criminal liability* of 'officer-involved' shootings within the borders of the county." (Compl. ¶ 7 (emphasis added).) The complaint further alleges that District Attorney Rackauckas, as a final decision-maker for the County "ratified the aforesaid

illegal conduct of Defendant" by conducting an investigation into Deputy Cruz's shooting of Mr. Mueller that was designed to cover up the truth of the incident. (Compl. ¶ 22.)

The Complaint's assertion that the District Attorney's Office's investigation into this officer-involved shooting pertains to criminal liability indicates that the district attorney is therefore acting as a state officer under *Weiner*, as the investigation is prosecutorial in nature. Accordingly, the final decisions of District Attorney Rackauckas in this context do not appear to be themselves attributable to the County Defendants in this context. If Rackauckas was acting in a capacity other than that of prosecutor, the pleadings as written do not indicate what capacity that might be.

### B. Plaintiff's Request to Amend his Complaint with Respect to the *Monell* Claim

Mr. Mueller has requested leave to amend his complaint in the event that the Court grants Defendants' motion for judgment on the pleadings with respect to his *Monell* claim. Generally, the court applies a liberal standard in granting leave to amend a pleading under Federal Rule of Civil Procedure 15(a). But when, as here, the court has issued a scheduling order with a deadline for amending a pleading, the moving party must also satisfy the more stringent "good cause" standard under Rule 16(b). *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006). To amend a pleading after the cut-off date has been set, the movant must first demonstrate "good cause" for modifying the scheduling order. Fed. R. Civ. P. 16(b) ("A schedule may be modified only for good cause and with the judge's consent."). Rule 16(b)'s "good cause" standard "primarily considers the diligence of the party seeking the amendment," and "the focus of the inquiry is upon the moving party's reasons for

seeking modification [of the scheduling order]." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Once "good cause" is shown, the movant must further demonstrate that amendment is proper under Federal Rule of Civil Procedure 15(a). Rule 15 provides that where a party has amended its pleading once as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Granting or denying leave to amend a complaint is within the discretion of the district court. *Swanson v. United States Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996). "In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.'" *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

Here, Mr. Mueller asserts that if required, he can amend the Complaint to add facts showing that his shooting was not an isolated event and that prior use of excessive force demonstrates that the County has a "pattern of unconstitutional conduct" involving the use of deadly force that predates this incident. Mueller asserts that he will prove that the County Defendants have "shown a deliberate indifference to officer-involved shootings," that the County Defendants have never disciplined or prosecuted a deputy for a shooting, that they have "failed to remediate the repeated use of excessive force by [] deputy sheriffs," and that "they have legitimized and concurred in the shootings that have occurred." (Pl.'s Opp'n Br. at 12.) He intends to show that "these policymakers' indifference to the excessive use of force . . . allow[] these kind of shootings in the first place." (*Id.* at 14.)

Mr. Mueller has met the requirements of both Rule 15 and Rule 16. With respect to good cause to amend, the Court acknowledges that the timing of ratification and the permitted uses of evidence of a department's post-hoc approval of an officer's conduct remain confusing areas of law in this circuit, with ratification being possible in some instances but not others. And here, though Mueller alleged a substantial amount of post-incident conduct that is relevant, his pleadings simply failed to take the extra step of connecting that conduct with broader government policies or customs. Mueller's litany of accusations with regard to the investigation of Deputy Cruz's shooting, (Compl. ¶¶ 31-32), also to some extent put the department on notice that its general policies for the conduct of such investigations would become an issue during the lawsuit. This is not a case where the plaintiff was put on notice of the defects in his complaint in the early stages of the litigation and repeatedly failed to cure them. There is also no evidence that Mr. Mueller is acting in bad faith, with undue delay, or that amendment would be futile, so as to bar amendment under Rule 15. Though Defendants argue that they will be prejudiced if Mr. Mueller is granted leave to amend, the Court can cure any potential prejudice by permitting the Defendants to take additional limited discovery on issues raised in Plaintiff's amended complaint. Defendants are directed to file an appropriate motion with the Court should they determine that such discovery is necessary. Given the allegations Mr. Mueller has already included in his complaint and the Court's confidence that the complaint can be amended without undue prejudice to the Defendants, the Court finds that it is appropriate to permit Mr. Mueller to amend his complaint with respect to the *Monell* claim. This will ensure that his case is thoroughly considered on its merits.

**C. The Bane Act Claim**

Mr. Mueller asserts that Deputy Cruz, the County, and the Sheriff's Department are liable under the Bane Act, California Civil Code § 52.1, which provides for a claim against anyone who interferes or attempts to interfere—"by threats, intimidation, or

coercion"—with an individual's enjoyment of rights secured by the Constitution and laws of the United States or the Constitution and laws of the State of California. Several Ninth Circuit cases have indicated without detailed discussion that claims under § 52.1 are coextensive with § 1983 claims. *See, e.g., Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013). In recent years, however, the California Court of Appeal has repeatedly held that in order to give effect to the "by threats, intimidation, or coercion" language in the statute, alleged misconduct must involve threats, intimidation, or coercion independent of any threats, intimidation, or coercion inherent in the underlying constitutional violation. *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012). However, where "an arrest is unlawful *and* excessive force is applied in making the arrest, there has been coercion 'independent from the coercion in the wrongful detention itself.'" *Bender v. County of Los Angeles*, 217 Cal. App. 4th 968, 978 (2013) (emphasis in original) (quoting *Shoyoye*, 203 Cal. App. 4th at 959).

Defendants concede that the Complaint alleges the necessary combination of an unlawful detention or arrest and excessive force that under *Bender* states a § 52.1 claim. (Dkt. 54, Defs.' Br. at 15.) Instead, they argue that the claim for damages that Mr. Mueller filed with the County in connection with this incident before pursuing this lawsuit did not indicate that he was alleging that his arrest and detention was unlawful, and that California law therefore precludes him from raising his § 52.1 claim.

Before a claim for "money or damages" under California law against a public entity or employee can be filed, a claim must first be presented to the entity in accordance with California's Government Tort Claims Act (TCA). Cal. Gov't Code § 945.4. Such claims must state the "date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and provide "[a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." Cal. Gov't Code § 910. The failure to timely present a claim

or money damages to a public entity bars the plaintiff from bringing suit against that entity. *Sparks v. Kern Cty. Bd. of Supervisors*, 173 Cal. App. 4th 794, 798 (2009). This claim filing requirement applies with equal force to state law claims pursued in federal court. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).

The purpose of the requirements in § 945.4 and § 910 is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *Stockett v. Ass'n of California Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446 (2004).

Here, Mueller's claim filed with the County asserts that:

> Orange County Sheriff's Deputy Manual (sic) Cruz shot Claimant 5 times at 12:30 P.M. on March 10, 2012. Claimant was not armed with any weapon, he was located a considerable distance from the deputy, he did not resist the deputy, he did not make any furtive gestures, and he did not pose any physical threat to the deputy. Deputy Cruz was angry because he thought that Claimant was the individual who had recently evaded him on his motorcycle. Deputy Cruz fabricated a version of the events in order to avoid criminal and civil liability. Later, other Orange County Sheriff deputies or non-sworn personnel, who were not present at the time of the shooting, conducted an inadequate investigation and attempted to cover-up the truth. Deputy Cruz did not follow the written policies and procedures of the Orange County Sheriff's Department.

(Compl. Ex. A.) Defendants assert that because the claim does not indicate that Mueller's arrest was unlawful, Mueller was not compliant with the requirements of § 945.4 and § 910, and he cannot now litigate his Bane Act claim in federal court.

California caselaw, however, is fairly forgiving of plaintiffs, noting that "[a]s the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions, the claims statute should not

be applied to snare the unwary where its purpose has been satisfied." *Stockett*, 34 Cal. 4th at 446 (internal citations and quotations removed). Accordingly, "[a] complaint's fuller exposition of the factual basis beyond that given in the claims is not fatal, so long as the complaint is not based on an 'entirely different set of facts.'" *Id.* (quoting *Stevenson v. San Francisco Housing Authority*, 24 Cal. App. 4th 269, 278 (1994)). "Only where there has been a 'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim,' have courts generally found the complaint barred." *Id.* (citing *Blair v. Superior Court*, 218 Cal. App. 3d 221, 225 (1990)). But "[w]here the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental facts or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint." *Id.* The *Stockett* Court concluded that "[s]o long as the policies of the claims statutes are effectuated, [the statutes] should be given a liberal construction to permit full adjudication on the merits." *Id.* at 449.

In *Stockett* itself, the plaintiff's claim filed with the public entity alleged that he had been wrongfully terminated and that his termination had violated public policy. *Id.* at 447. His complaint later elaborated that his termination violated public policies favoring free speech and opposition to public employee conflicts of interest. *Id.* In resolving the claim in his favor, the Court noted that these theories did not represent additional causes of action that needed to be separately pled under § 945.4. *Id.* The Court also took into account the fact that the additional theories did not shift liability to other parties or premise liability on acts committed at different times or places. *Id.* at 448.

Here, though Mr. Mueller's claim filed with the County did not specifically enumerate his causes of action or allege that Deputy Cruz had unlawfully seized him apart from shooting him, the entire incident—including the seizure—was initiated by

Deputy Cruz and took place over a very brief span of time in a single location. Even a minimal investigation into the incident by the Defendants would necessarily consider the basis for the initial encounter between Deputy Cruz and Mr. Mueller, and whether Deputy Cruz had initiated a proper stop of Mr. Mueller before he fired the shots. The County was on notice of sufficient facts to indicate that it must investigate whether Mr. Mueller was seized by Deputy Cruz before the shooting occurred. Given the tight nexus between that seizure and the claim regarding the shooting, and in light of *Stockett*'s clear directive to give a liberal construction to the claims statutes provided their policies are effectuated, this Court concludes that Mueller's claim with Orange County gave sufficient information to enable his Bane Act claim to survive Defendants' motion for judgment on the pleadings.

Defendants discuss *Via v. City of Fairfield*, 833 F. Supp. 2d 1189 (E.D. Cal. 2011), as support for their position that the Bane Act claim must be dismissed, but it is readily distinguishable. In *Via*, the plaintiff's claim form filed with the government entity indicated that his claim was for "Injury caused by Officer A. Williams and other officers of the Fairfield Police Department *while being arrested*." *Id*. at 1197-98. The Court found that though the City of Fairfield received sufficient notice of the claims relating to the amount of force Officer Williams and the other officers used during the arrest, the TCA claim did not suggest that the plaintiff was claiming injury for the lack of probable cause supporting the issuance and execution of arrest warrants or criminal charges resulting from the officers allegedly false police reports. *Id.* at 1198. The court concluded that the additional claims in the complaint must be dropped because "the [a]llegations about the false information in the police reports do not provide greater detail about—and are not even related to—the allegations of force in the plaintiff's TCA claim." *Id.* Further, the alleged misinformation giving rise to the issuance of an arrest warrant was allegedly prepared in a false police report, by officers other than Williams, at a time and place other than the location of the arrest. *Id.* at 1192. This is the type of

"shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim" that *Stockett* contemplated. The alleged detention of Mueller by Deputy Cruz moments before he was shot is not.

## IV.  CONCLUSION

The Court GRANTS Defendants' motion for judgment on the pleadings on the *Monell* claim and DENIES Defendants' motion for judgment on the pleadings with respect to the Bane Act claim. Mr. Mueller has 21 days to file an amended complaint, should he wish to do so.

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

DATED:     December 23, 2015